**Gregory E. RUFFO, individually and t/d/b/a Ruffo's Auto Repair,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 13, 2002.

Decided Feb. 27, 2003.

Publication Ordered May 6, 2003.

---

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

Robert I. Johnston, Greensburg, for appellee.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (Department) appeals from the May 15, 2002 order of the Court of Common Pleas of Westmoreland County (trial court) dismissing the Department's three-month suspension of Gregory E. Ruffo's, t/d/b/a Ruffo's Auto Repair (Ruffo), Certificate of Appointment as an Official Emission Inspection Station and its two-month suspension of Ruffo as an Official Emission Inspector as well as the accompanying fines. We affirm.

Ruffo is the owner and operator of Ruffo's Auto Repair. By letter dated September 27, 2001, the Department notified Ruffo that his Certificate of Appointment as an Official Emission Inspection Station was being suspended for a period of three months and that he was being fined $1,000, pursuant to Section 4724(a) of the Vehicle

Code,[1] for faulty inspection. By separate letter also dated September 27, 2001, the Department informed Ruffo that his Certificate of Appointment as an Official Emission Inspector was being suspended for a period of two months and that he was being fined $100, pursuant to Section 4726(b) of the Vehicle Code,[2] for faulty inspection.

Ruffo filed timely appeals of the suspensions and the trial court held a *de novo* hearing on February 15, 2002.

The Department offered the testimony of Joseph D. Pugliese, a fleet technician with Parsons Advanced Technology, who conducts undercover inspections for the Department. Mr. Pugliese testified that sometime prior to June 4, 2001, he rigged a 1984 Ford Crown Victoria by disconnecting the exhaust hose from the air injection system and plugging it with a spark plug. According to Mr. Pugliese, the reconfiguration should have been noticed upon visual inspection and vehicle should have failed the emissions test.

The Department further presented the testimony of Steven Paul Gaghen, also employed by Parsons. Mr. Gaghen present-ed the car with the plugged air hose for emissions inspection at Ruffo's station on June 4, 2001. He observed Ruffo lift the hood of the car and walk around the vehicle to the tail pipe. Mr. Gaghen did not, however, observe Ruffo's visual inspection of the vehicle because he did not want to appear conspicuous. After inspecting the car, Russo approached Mr. Gaghen and informed him that the vehicle had passed.

Ruffo testified that he could not recall this particular inspection and stated that he had a routine procedure when conducting an inspection. He stated that he must have been interrupted during the inspection and overlook the plugged air hose. Ruffo agreed that the Department's regulations require him to verify that a vehicle has an air pump and that it is properly connected.

In sustaining Ruffo's appeals, the trial court, relying on the definition of "faulty inspection," determined that the Department failed to demonstrate that Ruffo did not perform a visual inspection of the evaporative control system in violation of the Department's regulations.[3] The Department then filed the present appeal.[4]

1. 75 Pa.C.S. § 4724(a), which provides that

[t]he [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. The [D]epartment shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the [D]epartment.

2. 75 Pa.C.S. § 4726(b), which provides that:

[t]he [D]epartment shall supervise mechanics certified under this section and may suspend the certification issued to a mechanic if it finds that the mechanic has improperly conducted inspections or has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. The [D]epartment shall maintain a list of all certified mechanics and of those whose certification has been suspended. Any suspended certificate shall be returned immediately to the [D]epartment.

3. In matters involving alleged violations of the Vehicle Code and the Department's regulations pertaining thereto, the Department bears the burden of proving such violations by a preponderance of the evidence. *Fiore Auto Serv. v. Department of Transportation, Bureau of Motor Vehicles*, 735 A.2d 734 (Pa.Cmwlth. 1998).

4. On review, we are limited to determining whether the trial court committed an error of law or whether its findings of fact are sup-

The issue before us is whether an inspector can have his certificates of appointment suspended for a "faulty inspection" under the Department's regulations even if he follows the procedures set forth therein.[5] The Department's regulations pertaining to certificates of emission inspection procedures are found in Chapter 177 of the Pennsylvania Code. Specifically, Section 177.291(g) provides that where a "faulty inspection" has occurred, the certificate of emission inspection shall be void. 67 Pa.Code § 177.291(g). The term "faulty inspection" is defined as *"[a] deviation or change in the procedure specified in this section . . . ." Id.* (emphasis added).

With regard to the required procedures for inspection, Section 177.291 provides, in relevant part;

(a) Certificates issued. The Department will issue a certificate of emission inspection, through an official emission inspection station, valid until the next scheduled emission inspection, for a subject motor vehicle which meets both the following:

(1) The motor vehicle has passed an inspection or reinspection performed by the emission inspection station.

(2) The motor vehicle has all required emission control devises installed under § 177.281 (relating to issuance of waiver).

(b) Certification procedures.

. . .

4. *A subject vehicle shall be required to undergo an annual emission inspection and, with the exception of vehicles which receive a waiver under § 177.281 may not exceed the emission standards specified in § 177.204 · (relating to emission standards) . . . .*

5. If the vehicle fails the emission inspection, no certificate of emission inspection may be issued except under § 177.281.

67 Pa.Code § 177.291(a) and (b)(4) (emphasis added).

Section 177.204, relating to emissions standards, requires that a visual inspection occur and that the inspector identify a catalytic converter, an exhaust gas recirculation valve, a positive crankcase ventilation valve, a fuel inlet restrictor, an air pump and an evaporate control system. 67 Pa.Code § 177.204(2)(iv). The inspector must also determine whether each device is properly connected and appears to be the correct type of device for the certified reconfiguration. *Id.* The regulation requires that the vehicle fail the visual inspection if the enumerated devices are not present, properly connected, or are not the correct type. *Id.*

The Department argues that because Ruffo failed to notice the plugged air hose during his visual inspection of the vehicle pursuant to Section 177.204 of the regulations, the inspection was faulty. The Department thus maintains that the certificates of appointments of emission inspection stations and inspector were properly suspended.

However, the language of Section 177.291 provides that only the *emissions standards* specified in Section 177.204 are

ported by substantial evidence. *Department of Transportation, Bureau of Motor Vehicles v. Wright Oldsmobile Honda,* 131 Pa.Cmwlth. 55, 569 A.2d 411 (1990).

5. In June of 2001, this Court issued a memorandum opinion addressing the same issue present here. In the prior case, the Department attempted to suspend Ruffo's certificates of appointment for a "faulty inspection" of a 1985 Subaru that had also been rigged to fail the inspection. *See Gregory E. Ruffo, individually and t/d/b/a Ruffo's Auto Repair v. Department of Transportation, Bureau of Motor Vehicles,* (Pa.Cmwlth., No. 2548 C.D.2000, filed June 1, 2001).

to be considered when determining whether a faulty inspection has occurred. According to the evidence, the 1984 Ford Crown Victoria was within the emission standards despite the plugged air hose.

 As we noted in the prior action between these two parties, Ruffo visually inspected the vehicle. The problem, however, is that the visual inspection failed to yield any result requiring failure of the emissions test. Ruffo did not deviate from the required procedures and thus, he did not conduct a "faulty inspection" as that term is defined by the Department's regulations. Those regulations do not address errors made during the inspection.

 While the Department argues that such an interpretation of its regulations is too narrow, we note that the Department has distinguished between "faulty" and "improper" inspections. Sections 177.602 and 177.603 of the regulations include the schedule of penalties for emission inspection stations and emission inspectors. 67 Pa.Code §§ 177.602, 177.603. Within the different categories of violations, the Department has distinguished "faulty inspections," and "improper inspections" both in the periods of suspension and in the fines imposed. Thus, it would appear that inspections which are not "faulty" *i.e.* that do not deviate from the procedures set forth in Section 177.291, but are otherwise irregular would be deemed "improper" for which the Department has promulgated a schedule of penalties.

We conclude that the trial court did not err in sustaining Ruffo's appeal of the suspensions and fines because the Department failed to establish that he conducted a "faulty inspection" as that term is defined by the Department's regulations. The trial court's order is therefore affirmed.

## ORDER

AND NOW, this 27th day of February, 2003, the May 15, 2002 order of the Court of Common Pleas of Westmoreland County is AFFIRMED.